324-0641, In re marriage of Nina Ito Appellant and Turaki Ito Appellee. Good morning, council. Good morning, Dan Duff on behalf of the appellants. Lisa, how did I pronounce your last name? Geese, like the bird. Okay. That will be easy to remember. Can you hear me okay? I can. All right. No, do you want to comment on? Oh, yes, thank you. Thank you. Justice Bertani. Judge Anderson is also on this panel, but he will not be joining us today. He will listen to the arguments. I think shortly after we are are done, but he had a, an appointment that he could not miss. So, he sends his apologies and he will be part of our discussion, which we will not have until after he's had an opportunity to listen to the arguments. So, Mr. Duff, if you are ready to proceed. That's where it's to me, it's trying to oversimplify this, but to me, the issue is this. The child support, the marital settlement agreement and the court order that adopted that. Specifically says that such a board of separate sorts of statutory guidelines based upon Mr. making 72,000 dollars a year and miss, you know, having current disability income of 60. What happened was, of course, she lost her disability income. She went on, what do you call it? I can't even think, but she was then making 33,000 dollars. So, it was a substantial change. Bottom line is just a potential chance. Well, we argued this before the trial court, the court said. Our 28. As to whether or not she's no longer receiving short term disability is respectfully don't find that that constitutes a significant change in circumstances. Well. I'm sorry, but of course, it does. I mean, going from 60,000 to 33,000 dollars is a substantial change. Let me ask you a question. Is there anything in the record. That explicitly states or acknowledges what she was making and how she was making it at the time of the approval. Yeah, there was at the time of the prove up. There was testimony. There was also in the court record that she had a disability income of 60,000 dollars. Was that a policy through employment or private? It was through employment. She was on disability at the time. She's getting 60,000 dollars disability pay. They cut that off, cut that off soon thereafter. Then she got unemployment insurance for the 33,000 dollars and at the time she was getting the 33,000 dollars. That's when we came in and asked for the substantial change. But basically the judge said, that's not a change. The judge got caught up on the fact that I think that what happened was there. When I first filed a petition, I brought, I filed an exhibit that showed that she had, my client had 30 disability ailments. At least she was gone to Mayo Clinic. She had at least 200 visits up at Mayo Clinic. At the time that I filed my petition for change, I filed the same exhibit. That doesn't mean she, the court went off and said, well, everything's the same. Well, not everything's the same. Sure, she had the same ailments, but that wasn't the issue. The issue was the monetary amount that she was getting. And also I'd like to point out that at that point in time, the severity of one of her ailments was quite, the severity went from a 2 to a 10. And one of the doctors, her main doctor, said that her ailments, the one that I'm referring to, is now disabling and devastating. So the court never got into that issue. The court just said, well, everything's the same, meaning the ailments, well, yes, the exhibits were the same. Mr. Duffy, you're talking about the court's ruling after your motion. I understand that. But at the time, so we had to set a baseline here. What was the word imputed used? If she was actually making $60,000 on disability payments, why was imputed ever incorporated into this document? I don't think it ever was. Preliminary in the MSA, it said that imputation was going to be used, but in the final decision, it was not. The final decision said it's based upon her having disability income of $60,000 and he having income of $72,000. You would agree that both of them are there, right? Because that's part of your brief. Your reply brief says in 2-4, it says one thing, and in 4-2, it says another. Yes, I think I got tied up in this imputation issue myself. But when you're looking back in the decree, it doesn't even mention imputation. Besides, imputation is a speculative issue. As the court just brought up, why did they even come up if she was specifically making $60,000 pursuant to the disability income? I agree with that. So why we went down that path, I think it was sort of like going down a rabbit hole. I don't think it is pertinent. And even if it was pertinent, things substantially changed. Their argument seems to be that imputation was valid in this particular case, even though the final decree doesn't even mention it. But even if that's true, they're sort of arguing that you can't change anything because it was imputed. Well, okay, that's a speculative concept for sure. But was it imputed? No. It was specifically $60,000, specifically based upon her disability income, which she lost, and then she went on income disability, unemployment insurance for $33,000. And they have the judge say, as to whether or not she's no longer receiving $60,000, is irrelevant, and she doesn't find that to be a significant change. It's hard. I don't know what else to say. It's hard to believe that she said that, but that was the court's ruling. Mr. Duff, do you have any other argument? I really don't, Judge. I'm going to wait to hear what the applicant has to say and then respond to that. But that's basically, that is our argument in a nutshell. Fair enough. Justice Bertani, do you have any questions? No, I don't. Thank you. All right, if you'll give me 1 second, Ms. Geese, the clerk is going to have to reset the clock here a little bit earlier than normal. Crystal, are you ready to reset? I am. Okay. Ms. Geese, whenever you're ready. Thank you. And I don't imagine I will use all of my allotted time either, although I do tend to talk a lot more than I think. So, I think that counsel is missing what the crux of the case is really about, which is his pleading. Does the pleading, the motion he filed in March of 2024, does it sufficiently allege a substantial change in circumstances to survive a motion to dismiss? While it's true, well-pled facts are accepted as true in Illinois, we are still a fact pleading state and the motion needs to allege specific facts that give rise to the relief being sought. The motion filed alleges three things that I suppose could be considered substantial changes in circumstances, or are the attempts to allege a substantial change in circumstances. The first one is alleged in paragraph 4. It relates to the parenting time of Maya. I don't think that this one really falls within the category of a substantial change for a number of reasons, one of which is there's already language in the allocation judgment about flexibility and that Mr. Ito may not take all of the time allotted to him. Two, the order was never modified. So, even if the parenting time had changed or was different, there was not a court order, which the case law supports must be contained in a court order if it's going to provide a basis for a modification. The second alleged substantial change in circumstances contained in paragraph 5, and that states that another significant factor in setting child support was the fact that the father's income at said time being $72,000 and the mother's disability income being $60,000. Even though at the time of the decree, Nina Ito was not receiving disability income and this it says $600,000, but it should be $60,000 was imputed. I'll come back to that because I think that that's the key allegation there that's problematic. But the last one is, again, that paragraph 6, significant changes have occurred. It states that Nina Ito is, quote, no longer receiving disability income and that she is unemployed, receiving no disability income, and being solely on unemployment income in the amount of $2,800 per month and not being able to work as Ms. Ito is still going to Mayo Clinic on a regular basis as a result of many ailments, procedures, and many needed surgeries, end quote. Back to paragraph 5, the allegation again there is at the time of the decree, she was not receiving disability income. So, all over the pleadings in this case, there's different factual information being alleged. In the motion to reconsider that Mr. Duff filed, he states that the $60,000 was based upon the disability pay she received and then was terminated. Paragraph 10 of that motion to reconsider says she received unemployment, but then it lapsed. Paragraph 13 of that motion to reconsider said at the time the MSA assumed she would be able to obtain gainful employment. Paragraph 21 says it assumed plaintiff would be able to earn $60,000 a year. Paragraph 22 says $60,000 was disability compensation that was assumed would continue. And then again, in the briefs here before this court, there's allegations that she was earning $60,000 per year at the time of the judgment. I don't think that's the case. In fact, I know that wasn't the case. Hence, the language contained in the marital settlement agreement section 2.4, the financial representations of the parties. So, that's key. If you look at Article 2, that is what the parties are representing are their financial situation. And in that paragraph 2.4, it says nothing about Ms. Ito receiving disability income. It talks about her income being imputed at $60,000 because she was working and making $92,500. And she represents that her income was going to be reduced to $60,000. She has an obligation to apply for social security disability and unemployment benefits and notify husband of any changes. But Ms. Geese, what about paragraph 4.2 then? Yeah, and I can address that because I was involved in this case. I shouldn't say I was personally the one that did the drafting from my office, but my office handled the drafting. And I think we can all acknowledge that no settlement agreement is perfect. And anybody that's been in the position of negotiating a settlement agreement on the eve of trial or the day of trial, which is what happened here, you can find a mistake. You can find an issue. You can find an error. I'm not sure I read it necessarily the same way that counsel's reading it or that maybe the court is reading it. The current disability income of $60,000, I think it could be interpreted as we're looking at how we defined it in paragraph 2.4 as she's claiming she's disabled and her current income and her by saying current disability income, it's a little bit vague and could be interpreted to indicate that that was her income at that time. I don't see it that way again because going back to 2.4, which is actually their representations of their income, their financial representations are contained in 2.4. The article 4 is more how the support was calculated and what numbers were used. So I don't give that as much weight, but I can acknowledge that there's a language issue. And in hindsight, I would have drafted that differently. But that really, I don't think matters because what we're looking at is what does the motion say? What does the pleading say? And again, this doesn't say my income at the time was $60,000 and I don't have disability. I lost my disability and I no longer am making $60,000. It says at the time she wasn't receiving disability income and the $60,000 was imputed. Then it says something different in the next paragraph. Then it says something different later on. The four corners of the pleading is what we're looking at. And if she had alleged my income was $60,000 at the time of the judgment, that changed. Maybe that would have been sufficient to survive a motion of dismiss. But again, that's not what's contained in the motion. It acknowledges it's imputed income. It acknowledges that she did not have that amount of disability income. And it's clearly stated in the marital settlement agreement that it was imputed. And so to your point, I mean, what does imputed means? It means attributed to. It's plain meaning is it's attributed to. It's not actual. It's not real. It's not it's not the set amount that that person is receiving. So whether or not Ms. Ito was receiving short-term disability at the time, I don't think really matters because it was imputed income to her and it was set considering her allegations that she had these health conditions, which were all the same. The court acknowledged that same exhibit was attached as part of their motion to continue with the same allegations regarding her ailments. So short-term disability by definition is short-term. It will end. So to suggest that I had short-term disability and it ended and now that's a substantial change in circumstances, we will address those arguments if that's what they're pleading alleges and it survives a motion of dismiss. But that isn't what it's alleging here. So if they want to file a motion that I had short-term disability and I thought I was going to get long-term disability and I didn't end up getting it. So, you know, the support should be modified. That's a substantial change. It was terminated and I wasn't eligible for a long-term. That would be an argument, but that's not what they've alleged. Their arguments are all over the place. They're contradictory in the various motions and briefs, but they're not sufficient to substantial change in circumstances. The income was $60,000 imputed. She acknowledges in the motion paragraph five, she says Nina Ito was not receiving disability and the $60,000 was imputed. So I think that's the basis for the court granting the motion to dismiss. And I think that that was the appropriate relief. How about the argument that the court really didn't look at that paragraph five, but looked at the fact that there'd been no change in the health of the petition? I don't think, I think the court didn't necessarily ignore the article four. I think that they focus, the court focused on 2.4 again, because that was the financial representation. No, I'm sorry, Ms. Geist, as it relates to the motion itself. Paragraph five is what I was referring to. And you're saying that the court didn't acknowledge it? I'm asking, I'm not saying. Oh, sorry. I misunderstood the question. Could you restate it? It seemed to me from my recollection that the court was focusing on Mr. Duff's client's health and not so much on what she was receiving. Certainly the use of the term imputed is part of that equation, but I don't recall her pointing out the error in paragraph five, which you have with Mr. Duff's answer to my earlier questions. Well, I think maybe you're correct as it relates to the original underlying motion to dismiss. Although looking back at it now, it does, it does appear the court did acknowledge on, in the record 25, it says that the court says, I still don't know what the change is other than she's not receiving short-term disability, which is not included in your motion, by the way. So to me, she's acknowledging that the 60,000 was imputed. And again, if there was a change relative to the short-term disability, again, that wasn't addressed in the motion. So I think in her original ruling, she does address the 60,000. And I think even more so in the motion to reconsider, that was largely what was raised in Mr. Duff's motion to reconsider was the imputation issue. And the court certainly didn't focus on the health issues in that ruling and specifically did address the imputation issue and the fact that this was an agreed upon imputation. This was what Ms. Ito agreed to set her support at, not that's what her income was. This is what she agreed to impute for purposes of calculating support. So again, I mean, I don't think that she will ever be able to show that her income was 60,000 at the judgment because it just, it wasn't. But if that's the argument to be made, then that's what should be contained in the pleading. That's what should be pled in the motion. And that wasn't what happened here. But if her income wasn't 60,000, aren't we looking at a situation where this might have been unconscionable? If she didn't have an income at the time. I know the court said it was not unconscionable in its finding, but it didn't seem like there was many questions asked about it in the prove up to me. Well, and Justice, I'm sure you've seen this before. What happens in the prove up is a snippet of the picture of what the judge learns about a case through various pre-trials and hearings. There are many conferences with this court where the court obtained much more information than what came out at the prove up. So sure, maybe that's an argument. Maybe that's an argument to be made, but that's not what was filed. There wasn't a 1401 motion to allege it was unconscionable. I think that that would be a tough argument to make when she agreed to that imputation and without getting too much into the I'm trying to stay focused on the four corners of the pleading, but the whole point was she couldn't prove disability. She couldn't prove it. And that's why we were there 11th hour and where we've been time and time again, still not having any proof of the health issue. So I think that that would be her burden to show that she had a serious medical condition. In my experience, when that's the case, you would be eligible for a long-term disability or a social security disability. There's nothing. This was a woman who was employed. It's not someone that isn't eligible for social security disability benefits. She would need to show her reasons for that. I mean, we all know that that process takes some time and it's certainly the case. Obviously, this is not in the record, Ms. Geese. I don't hold you to this. I'm just responding to your but I guess the real question I have you've answered, is there anything in the record that tells us what the true state of affairs was at the time we use the word imputation, which is usually used when someone is not gainfully employed or when they are, had made an income before, but now are arguing they don't have that income. Yeah. I mean, to me, that's what 2.4 is. So it is a situation where we have somebody that's they're no longer employed and there's a dispute between the parties. So remember, this is a settlement agreement. And so we don't think that Ms. Ito is disabled. We think she could be working. They think their position is she's disabled and can't be working. So where do we find the middle ground? We find it at this agreed upon number that everybody can live with. Well, six months later, Ms. Ito decides I no longer want to agree to that. And that's where we think that her pleading lacked the specific enough allegations to show a substantial change in circumstances. And that's where I think the court hit the nail on the head. She agreed to an imputation. This isn't a situation where the court made findings and heard evidence and testimony and imputed this income to her, which would have been a very different scenario. This is her agreeing and saying, I agree to set support and this imputed amount. And I think it's it was calculated was she represented she was employed and her income would have been reduced, but she was terminated. And it would have been 60,000 if she were employed. So we can make inferences. Maybe in her mind, she was thinking she could get social security disability or long term disability. In our mind, we're thinking she can get employment. But whatever it is, agreement is, she can obtain income at the capacity of 60,000. And if the facts are such that she cannot, and there's been a change, that's what she needed to plead in this motion. What is the change? What changed from September of 2024, 2023 to March of 2024 in that six month period? What was the change? Thank you, Ms. Gies. You've answered my question. Just kind of, do you have any other questions? Yeah, very quickly, hopefully. From my part, the council can take such time as she desires. First of all, I appreciate your candor with regard to the imprecision of the language used in 4.2. And having said that, couldn't 2.4 have erroneous language as well? I mean, just as readily, although I recognize that it's more voluminous. Yeah, I hear you. And again, I don't want to... And I know that's outside the pleadings. Right. Again, I have to acknowledge, I can see the problematic language in 4.2. I still feel like the intention of Article 2 is, this is what we're representing. These are our financial representations. So it's a little bit different when you have language in how we calculated the support. To me, that carries less weight. It's more, honestly, it's more lawyering. It's we're putting the language. How did we come up with those calculations versus Article 2, which is, here's what the parties are saying their incomes are. Here's our representations. So, I mean, I can see the point that that's problematic, that 4.2 language. But again, it still goes back to their motion does not say at the time of the judgment, I was making 60,000 and now I'm no longer making 60,000. In fact, it says the opposite. It says, even though at the time of the decree, Nina Ito was not receiving disability income and this 60,000 was imputed. So that language in itself is the problem. And that's what makes it, it's impossible to defend a motion like this. If it's not, I can't go and try to guess what their claim is, what they're trying to say is the substantial change in circumstances. It needs to be very specific what that is. And I'm not saying they don't have a basis to make these arguments. I'm just saying that these aren't the arguments that they made. So I could see how someone could say, well, if they were going to go back or replete, frankly, if it were me, I probably would have replet instead of filing an appeal, but that's not what they did. And so here we are. And I think we're still stuck with that pleading on its face and paragraph five presenting a problem. Gotcha. And I did ask that question, having presided over prove-ups and actually done prove-ups in practice. I remembered that. Thank you. And just one, I guess one question, Ms. Gieson, this should be very quick. Was there any request for an opportunity to replete? No, not that I recall. No. Thank you. Mr. Duff? Yeah, Judge. Mr. Gieson has admitted that there is a mistake in the language in two point, whatever it was, I'd like to point out that they're the ones that drafted this. So if there's a mistake, it should be ascribed to the drafter of this. Well, both parties are represented by counsel, correct? Pardon me? Have you represented Ms. Ito? Yes. This is not a consumer case. Let me ask you about paragraph five. How do you respond to the fact that paragraph five says that she wasn't receiving $60,000 when you just told me that she was receiving $60,000? I'm sorry if I said that. I think the facts are in fact true that when we drafted, when everybody drafted this and we went to the prove-up, she was getting the disability income. She has got so many different ailments at that particular point in time, she was not getting disability income. But at the time we drafted it, she thought she was. Believe it or not, if she testified, she said she doesn't open her mail for months. Bottom line, though, is the language. You're correct. I made a mistake. She was not making $60,000. She wasn't making any income at the time, which is more relevant to imputing the income. So the bottom line, this is why I said we're going down a rabbit hole here. Well, the rabbit hole is then you were actually imputing income, which is what the respondent is arguing here. Okay. So whether we were imputing income or not, what difference does it make if she's not making it at the time of the petition for modification? So saying imputing income, you're saying, well, she was making $60,000. I think the language that should be pertinent here is 4.2, which specifically says it is based upon disability income of $60,000. At the time of my motion, she was making $33,000 unemployment income. And they have the judge say, well, that doesn't even count. I don't know. I think everybody's arguing around that point. It was based upon $60,000. She was making $33,000 at the time of my petition. That is the important part. Whether it was imputed $60,000 and she ended up making $33,000 or whether it was real income of $60,000 and she was making $33,000. I personally don't see the difference. The bottom line is she's not making the amount of money that her child support was based upon. And I don't think we can, I don't think we can avoid that. I want to just dismiss paragraph 2.2 or whatever it was, because it was a scrivener's there or whatever. They're the ones that drafted the agreement. And what should be relevant is the 4.2, which says that it was based upon income of $60,000. At the time of the petition, she was making $33,000. That is a substantial change in circumstances. Was she making $33,000 the day that she said she was imputing $60,000? No. After that or the week? I mean, we don't really know, do we? Not offhand judge, but it was later. I know that. She's had a tough go. And again, I think the judge concentrated on the fact that Exhibit 1 and Exhibit 1 in both of my petitions allege the same type of ailments. And she went down that path, but I don't see what differences it make in the first place. But in the second place, these ailments can go from a severity of a 2 to a severity of a 10. And as I indicated, one of her medical providers provided a document to myself, a medical record that said one of her diseases went from whatever it was to a debilitating and devastating situation for Ms. Ito. So to me, the argument about all the ailments are the same, that's not true. There was no evidence on the fact of whether there's been an increase or more of a disability than there was at the time of my original petition. What we're arguing is 4.2 says it was based upon 60 grand, whether it was imputed to be 60 grand or based on specifically an income of 60 grand. To me, I don't see the relevance of that. The relevance is it was based on 60 grand. The language is pretty clear in 4.2 that it was based on 60 grand. And it was based on his 72,000. And my petition alleges that she has a substantial chance that she's only making 33,000. I mean, to cut away from everything else, that's the bottom line. And that's what I'm arguing. Thank you, Mr. Duff. No questions. All right. I don't have any further questions. Thank you. The arguments will be taken along with your briefs under advisement, and we will issue a ruling in due course. Thank you very much. And we will consult with Judge Anderson once he listens, obviously. Yes. Thank you, everybody. Have a good day. Bye.